# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the cellular telephone assigned call number 313-398-0313, that is stored at premises controlled by T-Mobile US, Inc. | ) ) ) ) ) ) ) | Case: 2:20-mc-51079<br>Judge: Steeh, George Caram<br>Case No.  Filed: 09-15-2020 At 09:12 AM<br>IN RE:SEALED MATTER(SW)(MLW) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.  This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the ____Western____ District of ____Washington____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1035 | False Statements Relating to Health Care Matters |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Matthew Sluss
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 15, 2020

*Judge's signature*

City and state: Detroit, Michigan          Hon. Anthony P. Patti U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (313) 398-0313, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. | Case No.    Case: 2:20-mc-51079<br>Judge: Steeh, George Caram<br>Filed: 09-15-2020 At 09:12 AM<br>IN RE:SEALED MATTER(SW)(MLW)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, MATTHEW SLUSS, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (313) 398-0313, (the "SUBJECT PHONE"), that is stored at premises controlled by T-MOBILE, US, INC. ("T-MOBILE"), a wireless telephone service provider headquartered at 12920 SE 38th Street, Bellevue, WA, 98006. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-MOBILE to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since September 2017. During my employment with the FBI, I have investigated federal crimes including mail fraud, wire fraud, bank fraud, bankruptcy fraud, and various other criminal matters.

1

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1035 have been committed, are being committed, and will be committed by AMINA ABBAS a/k/a AMNA ABBAS, a/k/a ANNA ABBAS. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. The United States, including the FBI and U.S. Department of Health and Human Services Office of Inspector General ("HHS-OIG"), is investigating crimes involving the Health Resources and Services Administration's Coronavirus Aid, Relief, and Economic Security (CARES) Act Provider Relief Fund. The investigation concerns possible violations of, *inter alia*, 18 U.S.C. § 1035 (False Statements Relating to Health Care Matters).

6. The CARES Act Provider Relief Fund was implemented to assist providers on the front line of the COVID-19 response. Recipients of the fund must agree to certain terms and conditions. These include requirements that they provide or provided after January 31, 2020 diagnoses, testing, or care for individuals with possible or actual cases of COVID-19, that the payment will only be used to prevent, prepare for, and respond to coronavirus, and that the payment shall reimburse the Recipient only for health care related expenses or lost revenues that are attributable to coronavirus. *See Acceptance of Terms and Conditions*, available at https://www.hhs.gov/sites/default/files/terms-and-conditions-provider-relief-30-b.pdf (last

visited September 14, 2020).

7. Recipients can attest to the terms and conditions of the Provider Relief Fund by logging onto a portal accessible through the HHS website, or at https://cares.linkhealth.com/#/. This portal is accessible by both smartphone and computer.

8. According to the Pew Research Center, 81 percent of Americans own smartphones. Pew Research Center, *Mobile Fact Sheet*, available at https://www.pewresearch.org/internet/fact-sheet/mobile/ (last updated June 12, 2019). A smartphone performs many of the same functions as a computer, typically having internet access, the ability to surf the web, and an operating system capable of running downloaded applications.

9. During the week of January 27, 2020, ABBAS, a resident of Brownstown, Michigan, and the owner and president of a now non-operational Indiana-based home health agency ("the Agency"), notified employees that the Agency would cease operations as of January 31, 2020, prior to the requisite date for being eligible for receipt of CARES Act Provider Relief funds.

10. According to Medicare claims data, the Agency treated only two beneficiaries in 2020: one ended care in early January of 2020 and the other was discharged from the Agency's care in early February of 2020. This information was corroborated via an employee interview.

11. Unemployment records from the Indiana Department of Workforce Development indicate that the office administrator's last date of employment with the Agency was January 31, 2020. A former nurse for the Agency stated that in January of 2020, the office administrator informed her that the Agency was going out of business. The former nurse was asked to return all agency-issued equipment, such as a vital signs monitor and blood pressure cuff. Since the end of her employment with the Agency, she has been working at a nursing home.

12. According to public records, T-MOBILE provides service for the SUBJECT PHONE.

13. The Agency listed the SUBJECT PHONE on materials notifying the Indiana Department of Health of its intent to cease business. The Agency sent these materials by United States Mail, postmarked April 4, 2020. The envelope's return address bore ABBAS' name and a home address used by ABBAS.

14. The Agency listed the SUBJECT PHONE on its notice of termination of its provider agreement with Medicare. For example, a letter dated March 27, 2020 alerting Palmetto, the Medicare Administrative Contractor, to the Agency's voluntary termination and signed by ABBAS, advises Medicare to call ABBAS on the SUBJECT PHONE with any questions.

15. The former office administrator told a law enforcement agent that sometime in March 2020, ABBAS instructed the employee to contact Verizon to forward the Agency's office phone number to the SUBJECT PHONE, which the former office administrator knew to be ABBAS' cell phone number.

16. On or about March 31, 2020, the office administrator received a text message from ABBAS on the SUBJECT PHONE requesting the phone number of the local newspaper, the La Porte County Herald Argus, so ABBAS could inquire about a newspaper advertisement regarding the Agency's closure.

17. The Agency has a business account with Chase Bank. Beginning in July of 2014, the account had two signatories: ABBAS and the then-office administrator. Chase Bank account information reveals that on March 10, 2020, ABBAS removed the office administrator as a signatory from the Agency's Chase bank account, making ABBAS the sole signatory of the

account. Subpoena returns from Chase Bank listed the SUBJECT PHONE as the phone number affiliated with the Agency's bank account. Subpoena returns from Chase Bank also listed the SUBJECT PHONE as affiliated with ABBAS' personal account. Additionally, on March 27, 2020, a check from Verizon written out to the Agency was deposited into ABBAS' personal account. Bank statements from approximately December 2018 through August 2019 listed the same address for ABBAS as was printed on the envelope transmitting the Agency's closure notice to the Indiana State Department of Health.

18. On April 17, 2020, according to data from the Department of Health and Human Services and the Agency's banking information from Chase Bank, $37,657 from the initial CARES Act Provider Relief Fund distribution was deposited into the Agency's Chase bank account.

19. Also on April 17, 2020, the office administrator logged into an email account connected to the Agency. The office administrator saw an email for provider relief funds with the terms of agreement that needed to be accepted. She printed a copy of the email, but did not take any other actions in regard to the email.

20. Between approximately April 17, 2020 and approximately April 21, 2020, the Agency issued four checks to ABBAS' family members, all signed by ABBAS:

    a. April 17, 2020 – check 2424 in the amount of $9,892.50 to F.A.;
    b. April 18, 2020 – check 2425 in the amount of $7,890.41 to N.M;
    c. April 18, 2020 – check 2426 in the amount of $9,928.69 to F.A.;
    d. April 21, 2020 – check 2427 in the amount of $8,448.60 to F.A.

21. According to witness interviews, neither of these family members ever worked for the Agency. According to records from the Indiana Department of Workforce Development, N.M. was never on the payroll for the Agency. In 2017, a record of $156.75 in gross wages for the first quarter for "AHM, F" is on file. This matches the first three letters and first initial of

F.A. However, no records of wages for "AHM, F" or for F.A.'s full name (subsequent years identify the full names of wage earners) appear outside of this early 2017 file. When agents interviewed the spouse of this recipient of the checks, the spouse said that the couple needed the money to cover living expenses.

22. On May 2, 2020, a representative from the Agency, believed to be ABBAS, falsely certified that the payment would be used according to the outlined terms and conditions relating to the COVID-19 crisis, despite having wound down the business prior to the pandemic.

23. Information related to the SUBJECT PHONE will help confirm the identity and location of the individual who submitted the false and fraudulent certifications regarding the Provider Relief Fund payment for the defunct Agency. Based on witness interviews and bank records analysis, we expect information related to the SUBJECT PHONE will show that ABBAS was located in the Eastern District of Michigan on or about May 2, 2020, when the attestation was made through the online Provider Relief Portal.

24. Information related to the SUBJECT PHONE will show whether the IP address connected with the portal login on or about May 2, 2020 was used by the SUBJECT PHONE. Accordingly, the information could show whether the SUBJECT PHONE was used to violate 18 U.S.C. 1035.

25. Information to be disclosed by the provider will also show whether the SUBJECT PHONE was used to access electronic communications from HRSA sent beginning in April 2020 through the present to fund recipients about the Provider Relief Fund. This includes emails relating to the terms and conditions of the fund, as well as auditing and reporting requirements related to the use of the money.

26. In my training and experience, I have learned that T-MOBILE is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

27. Based on my training and experience, I know that T-MOBILE can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as T-MOBILE typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

28. Based on my training and experience, I know that wireless providers such as T-MOBILE typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless

7

providers such as T-MOBILE typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

30. I further request that the Court direct T-MOBILE to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-MOBILE, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
MATTHEW SLUSS
Special Agent
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on September 15, 2020

_____
Honorable Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (313) 398-0313, ("the Account"), that are stored at premises controlled by T-MOBILE US, INC. ("the Provider"), headquartered at 12920 SE 38th Street, Bellevue, WA, 98006.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period April 1, 2020 through the present.

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of 18 U.S.C. § 1035 involving AMINA ABBAS, a/k/a AMNA ABBAS, a/k/a ANNA ABBAS during the period April 1, 2020 through the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

11

Trial Attorney: Emily Gurskis   Phone: (202) 203-9786
Special Agent: Matthew Sluss   Phone: (313) 919-1327

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the cellular telephone assigned call number 313-398-0313, that is stored at premises controlled by T-Mobile US, Inc. | )<br>)<br>)  Case No.<br>)<br>)<br>) | Case: 2:20-mc-51079<br>Judge: Steeh, George Caram<br>Filed: 09-15-2020 At 09:12 AM<br>IN RE:SEALED MATTER(SW)(MLW) |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the   __Western__   District of   __Washington__
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   __June 29, 2020__   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   __the presiding Magistrate Judge on duty__   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   __September 15, 2020   9:12 pm__                  _____
                                                                            *Judge's signature*

City and state:   __Detroit, Michigan__                Hon. Anthony P. Patti U.S. Magistrate Judge
                                                       *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

| Certification |
|---|
|     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>                                                              *Executing officer's signature*<br><br>                                                                 *Printed name and title* |